UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRONE L. WHITE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,[1]<br><br>　　　　Defendant. | No. 2:24-cv-02068-EFB (SS)<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits under Title XVI of the Social Security Act. ECF No. 1. Pending before the court is plaintiff's motion for summary judgment and remand, and defendant's motion for remand. ECF Nos. 12, 14 & 15.[2] For the reasons set forth below, the court grants plaintiff's motion and remands the matter to the Commission, with directions as set forth below.

////

////

---

[1] Frank Bisignano is substituted as defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings in this action, including judgment, pursuant to 28 U.S.C. 636(c)(1). ECF No. 10.

1

I. **Background**

This action arises from a request for disability benefits plaintiff originally sought in 2009 and, after they were terminated, sought anew in 2016. AR 21, 108-10.[3] In his 2016 application, plaintiff alleged he had been disabled from 2009 through 2016 due to a back injury, pain, left leg deterioration, and partial paralysis. AR 95-96, 108-10. This application was denied at the initial and reconsideration levels on October 21, 2016, and January 12, 2017, respectively. AR 106-21.

Plaintiff requested and received a hearing before an Administrative Law Judge, which was held on February 27, 2018. AR 21. The ALJ found plaintiff not disabled in a decision issued August 15, 2018. AR 18-34. The ALJ found that the plaintiff had not engaged in substantial gainful activity since his application date of June 3, 2016; plaintiff has the severe impairments of a retained bullet fragment in the left side of the S1 vertebral body and projecting into the spinal canal, with atrophy in the left lower extremity; and plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 23-24. Concerning plaintiff's residual functional capacity (RFC), the ALJ made the following finding:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CPR 416.967(a), except he is able to lift and carry 10 pounds frequently and 20 pounds occasionally. His standing and/or walking are limited to two hours, cumulatively, during the workday. His sitting is limited to six hour, cumulatively, during the workday. He requires the use of a cane for ambulation over 100 yards. He is limited to walking on even surfaces. He is limited to occasional climbing of ramps and stairs; he cannot climb ropes, ladders, or scaffolds. He is limited to occasional balancing, stooping, kneeling, crouching, and crawling. He cannot operate foot controls with his left lower extremity. He requires the ability to sit or stand, alternating every 30 minutes, without time off task.

AR 24. The ALJ further found that plaintiff has no past relevant work; plaintiff was born on September 2, 1971 and was 44 years old, thus meeting the definition of a younger individual aged

---

[3] "AR" refers to the Administrative Record, which defendant lodged on October 25, 2024. ECF No. 11.

2

18 to 44, on the date the application was filed, and subsequently changing to the category of a younger individual aged 45 to 49; plaintiff has at least a high school education and was able to communicate in English; and transferability of job skills was not an issue because plaintiff did not have past relevant work. AR 27-28. The ALJ then found that, "Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." AR 28. She based this determination in part on the hearing testimony of a Vocational Expert (VE) who identified available jobs the plaintiff could perform as "1. Table worker, . . . which . . . has approximately 72,000 jobs in the national economy; 2. Assembler, . . . which . . . has approximately 65,000 jobs in the national economy; and 3. Film touch up inspector, . . . which . . . has approximately 32,000 jobs in the national economy." AR 29. While acknowledging that plaintiff's counsel had questioned the expert on the reliability of these figures, the ALJ ultimately found this testimony credible. *Ibid*. The ALJ then found that plaintiff was not disabled within the meaning of the Social Security Act. AR 29-30.

Plaintiff appealed the decision to the Appeals Council, arguing that the job numbers to which the VE had testified were false and inflated. AR 299. He included screenshots from SkillTRAN's data program indicating job numbers far lower than those to which the expert had testified.[4] AR 299-303. The Appeals Council denied review on June 6, 2019. AR 1.

Plaintiff then filed an action in this court seeking reversal of the agency's decision. AR 499, 505; *White v. Commissioner*, 2:19-cv-01498-AC. He argued that the Commission's decision was not supported by substantial evidence because, at stage 5, the three assessed occupations did not "exist in significant numbers," supporting this argument with the data he had submitted to the Appeals Council. AR 509-11; *see* Motion for Summary Judgment (ECF No. 11), *White v. Commissioner*, 2:19-cv-01498-AC, at 5-9.[5] The court held that substantial evidence supported

---

[4] SkillTRAN Browser—Job Browser Pro is a computer software that reports estimates of the numbers of relevant jobs available in various categories in the national economy. *See Wischmann v. Kijakazi*, 68 F.4th 498, 501 (9th Cir. 2023); *Purdy v. Berryhill*, 887 F.3d 7, 14 (1st Cir. 2018).

[5] The court takes judicial notice of the pleadings filed and orders entered in *White v.*

3

the ALJ's decision and granted summary judgment in favor of the Commissioner. AR 511.

Plaintiff appealed this judgment to the Court of Appeals for the Ninth Circuit, which reversed. The Court held that "[t]he evidence White submitted to the Appeals Council created an inconsistency in the record that the agency had an obligation . . . to address and resolve." *White v. Kijakazi*, 44 F.4th 828, 830, 837 (9th Cir. 2022); AR 488. The Court "h[e]ld that under [its] decision in *Buck v. Berryhill*, 869 F.3d 1040, 1052 (9th Cir. 2017), remand is required to allow the ALJ to address White's evidence of vastly discrepant job-number estimates." *White*, 44 F.4th at 830; *see also id*. at 837 ("Applying *Buck*, we hold that remand is appropriate to allow the ALJ to address the evidence and to resolve the inconsistency between the job-number estimates provided by White and by the VE."). The Court reversed the decision of the district court with directions that the matter be remanded to the agency for further proceedings consistent with the Court's opinion. *Id*. at 837; AR 488.

Upon remand from the Ninth Circuit, this court reversed the Commissioner's decision and remanded the matter to the Commission "for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g)." AR 504. The Appeals Council then vacated the prior agency decision and remanded the matter to an ALJ to "offer the claimant the opportunity for a hearing, address the additional evidence submitted, take any further action needed to complete the administrative record and issue a new decision." AR 514.

A second administrative hearing was held on February 22, 2024, before a newly-assigned ALJ. AR 398-407. The ALJ noted that the prior proceedings remained part of the record before him and examined plaintiff on whether any factual changes had occurred since the date of the previous hearing, to which plaintiff provided some testimony about his functioning. AR 420-31. Addressing the Ninth Circuit's order, the ALJ explained his understanding that, "This is basically a new decision. . . the prior decision is vacated and so I am not bound to use or refer to any of the prior jobs and this is a different VE." AR 435. The ALJ called as a witness a Vocational Expert

---

*Commissioner*, 2:19-cv-01498-AC. *See* Fed. R. Evid. 201(c)(1); *MGIC Indem. Co. v. Weisman*, 803 F.2d 500, 505 (9th Cir. 1986); *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980); *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953).

4

and asked whether there were jobs in the national economy for a person with no work experience and a high school education, who is hypothetically capable of a "light range of work" but was limited such that he had "no ambulation on uneven terrain and requires a cane to ambulate long distance which is over 100 yards. . . . Ramps and stairs, balancing, stooping, kneeling, crouching and crawling are occasional. No climbing ladders and scaffolds, no work around unprotected heights, avoid concentrated exposure to moving mechanical parts." AR 432. The Vocational Expert testified that such an individual could perform "light work" of a routing clerk, a price marker, or a parking lot attendant, which were available in the national economy. AR 432-33. The ALJ altered the hypothetical to describe a person who "could sit for five to 10 minutes and then would need a five minute off task break before resuming sitting again, lifting would be limited to 20 pounds maximum and standing would be limited to five minutes or less at a time before the individual would require an off task break." AR 433. In response, the VE testified that there were no jobs available for such a person in the national economy. The ALJ then altered the hypothetical again to "assume such an individual would be off task 25 percent of the time," and the VE testified that there would no jobs in the national economy available for the person. *Ibid*.

Counsel for plaintiff then began questioning the VE on the job numbers data that was the subject of the prior proceeding and the Ninth Circuit's order, beginning with "table worker." AR 435-36. The ALJ interjected, indicating that this testimony would not be relevant to his decision, as he was "not bound by those jobs," and he "will not be using [them] in my decision." AR 436. He explained, "that is a different VE. I didn't have an opportunity to examine the prior VE, because that decision was remanded. This is a new VE and so I am issuing a whole new decision." *Ibid*. Nonetheless, plaintiff's counsel examined the VE on SkillTRAN's Job Browser Pro job data estimates for the jobs identified in the prior proceeding: table worker, assembler, and film touch-up inspector. AR 437-441. The VE testified that there were 1,225 table worker jobs in the national economy, 20 assembler jobs, and 1,119 film touch-up inspector jobs in the national economy. AR 441.

The ALJ then read to the VE plaintiff's RFC that had been determined in the prior Commission proceeding. AR 442-43. The VE identified it as describing sedentary capacities.

AR 443.  She testified that, given the capacities described, there were available jobs of document preparer, for which there were 11,000 sedentary jobs in the national economy; clerical sorter, for which there were 28,000 sedentary jobs nationally; and telephone solicitor, for which there were 30,000 national jobs.  AR 443-46.

The ALJ issued a decision on May 20, 2024, finding plaintiff not disabled.  As in the prior proceeding, plaintiff found that the plaintiff had not engaged in substantial gainful activity since his application date of June 3, 2016; plaintiff has the severe impairments of a retained bullet fragment in the left side of the S1 vertebral body and projecting into the spinal canal, with atrophy in the left lower extremity; and plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  AR 400- 02.  The ALJ then found,

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), but he is limited to no ambulation on uneven terrain, and he requires a cane for ambulation over 100 yards. He is limited to only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. He can never climb ladders or scaffolds. He cannot work around unprotected heights. In addition, he must avoid concentrated exposure to moving mechanical parts.

AR 403.  The ALJ based this finding in part on evidence post-dating the prior proceeding, including testimony from plaintiff at the February 2024 hearing.  AR 405.  The ALJ further found that plaintiff has no past relevant work; plaintiff was born on September 2, 1971 and was 44 years old, thus meeting the definition of a younger individual aged 18 to 44, on the date the application was filed, and subsequently changing to the category of closely approaching advanced age; plaintiff has at least a high school education; and transferability of job skills was not an issue because plaintiff did not have past relevant work.  AR 406.

The ALJ then found that, considering plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform.  AR 406.  He based this finding on the Vocational Expert's testimony describing the availability of the jobs of routing clerk, marker, and parking lot

attendant. AR 407.  Finally, he found plaintiff not disabled.  *Ibid*.

Plaintiff filed the instant action on July 30, 2024, seeking reversal of the adverse decision of the ALJ.  ECF No. 1.  The parties now both seek remand to the ALJ, although dispute the parameters of the remand.[6]  ECF No. 12, 14.

**II.    Legal Standards**

**A. The Disability Standard**

To qualify for disability insurance benefits under the Social Security Act, a claimant must show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[7] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

---

[6] Plaintiff has also filed a notice that the instant case is related to *White v. Kijakazi*, 2:19-cv-01498-AC, pursuant to Local Rule 123.  ECF No. 5.  Because judgment has been entered in *White v. Kijakazi*, 2:19-cv-01498-AC and the court has ordered that case closed, *see White v. Kijakazi*, 2:19-cv-01498-AC, ECF Nos. 22-23, there is no judicial economy or other efficiency to be served by relating the cases.  *See* L.R. 123(a)(3)-(4); *see, e.g.*, *Johnson v. Sherman*, No. 1:19-cv-00984SABPC, 2019 WL 3892363, at *3 (E.D. Cal. Aug. 19, 2019); *Winters v. Hubbard*, No. 1:08-cv-01681LJODLBPC, 2009 WL 2579358, at *1 (E.D. Cal. Aug. 19, 2009).  Accordingly, the court declines to relate the cases.  *See* L.R. 123(a), (c).

[7] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

7

> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

*Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). At each of these five steps, "the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020). (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In steps one through four, the burden of proof is on the claimant. *Ford*, 950 F.3d at 1148. A claimant establishes a prima facie case of qualifying disability once he has carried the burden of proof from step one through step four. *Ibid*.

Before making the step four determination, the ALJ first must determine the claimant's RFC. *Batson*, 359 F.3d at 1194; *see* 20 C.F.R. § 416.920(e). The RFC is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 404.1545(a)(1). A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(d)(2) (RFC is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying the ALJ as responsible for determining RFC); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g); *Batson*, 359 F.3d at 1194. If the claimant can perform other work in the national economy, then the claimant may not be found to be disabled. *Ibid.*

////

////

### B. Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). The court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart (Thomas)*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)); *see also Dickinson v. Zurko*, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v. CalPortland Co. (CalPortland)*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless, *Stout*, 454 F.3d at 1055-56, and the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

In conducting its analysis, the "reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). If the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford*, 950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

### C. Law of the Case and Rule of Mandate

Under the law of the case doctrine, a court is generally barred from considering an issue that has already been decided by that same court or a higher court in the same case. *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012). This doctrine applies to Social Security cases. *Stacy*, 825 F.3d at 567. In the Social

1  Security context, the law of the case doctrine typically prohibits an ALJ from revisiting the
2  findings of a previous ALJ on the same issue in the same case. *Ibid.*; *see also Fallon v. Dudek*,
3  135 F.4th 831, 835-36 (9th Cir. 2025). The law of the case doctrine serves the purpose of
4  promoting "'the finality and efficiency of the judicial process by protecting against the agitation
5  of settled issues'" in Social Security cases. *Fallon*, 135 F.3d at 836 (quoting *Christianson v. Colt
6  Indus. Op. Corp.*, 486 U.S. 800, 816 (1988)).

   The rule of mandate doctrine reflects "a specific and more binding variant of the law of
   the case doctrine." *Magnesystems, Inc. v. Nikken, Inc.,* 933 F. Supp. 944, 949 (C.D. Cal. 1996).
   Under the rule of mandate, a lower court receiving a mandate from a higher court "'cannot vary it
   or examine it for any other purpose than execution.'" *United States v. Cote*, 51 F.3d 178, 181
   (9th Cir. 1996) (citation omitted). On remand, the higher court's mandate "controls the [lower
   court's] resolution of issues 'decided either expressly or by necessary implication'" in the higher
   court's order. *Magnesystems, Inc.*, 933 F. Supp. at 949 (quoting *Quern v. Jordan,* 440 U.S. 332,
   347 n. 18 (1979)). Thus, the lower tribunal "could not revisit its already final determinations
   unless the mandate allowed it." *Cote,* 51 F.3d at 181; *see, e.g., Ruiz v. Apfel*, 24 F. Supp. 2d
   1045, 1050 (C.D. Cal. 1998). "Deviation from the court's remand order in the subsequent
   administrative proceedings is itself legal error, subject to reversal." *Sullivan v. Hudson,* 490 U.S.
   877, 885 (1989); *see, e.g., Holst v. Bowen*, 637 F. Supp. 145, 146-47 (E.D. Wash. 1986).

   In Social Security cases, the hierarchy of mandate authority is such that "the district
   court's position to the Appeals Council (and indirectly, the ALJ) is analogous to that of the court
   of appeals' position with respect to a trial court." *Ischay v. Barnhart*, 383 F. Supp. 2d 1199, 1215
   (C.D. Cal. 2005); *see generally Stacy*, 825 F.3d at 567 (holding the rule of mandate applies in
   Social Security cases and assuming the district courts have a superior relationship to the agency);
   *cf. Sullivan*, 490 U.S. at 886 (describing the district courts as having supervisory authority over
   the Secretary of the Department of Health and Human Services). The Court of Appeals is, of
   course, superior to the district court and, in turn, to the Appeals Council and ALJ. *Ischay*, 383 F.
   Supp. 2d at 1215; *Holst*, 637 F. Supp. at 147-48 (describing any contrary construction as
   "anarchical").

### III. Analysis

Both parties request that agency's 2024 decision denying plaintiff disability benefits be reversed and the matter be remanded to the agency, though the parties disagree as to the basis for remand and scope of the remand order. Plaintiff argues that the ALJ erred in his 2024 order by exceeding the scope of the prior remand order, and that the instant matter should be remanded for entry of a finding of disability and an award of benefits. ECF No. 12. Defendant argues that reversal is warranted because the ALJ's 2024 decision lacked substantial evidence for any of the ALJ's findings concerning plaintiff's functioning from August 16, 2018 through May 20, 2024, and that remand is appropriate to permit the ALJ to make further factual findings. ECF No. 14 at 3-5. For the reasons set forth below, the court reverses the agency's decision denying plaintiff benefits and remands the matter to the agency for an immediate award of benefits.

### A. The ALJ Committed Legal Error on Remand

The ALJ committed legal error by treating the matter as tabula rasa when it was remanded to the agency after the Court of Appeals' reversal in 2022. Upon remand, pursuant to the law of the case doctrine and the rule of mandate, the issues before the ALJ were narrow and were defined by the scope of the Court of Appeals' mandate order. *See Sullivan*, 490 U.S. at 885-86; *Stacy*, 825 F.3d at 567; *Cote*, 51 F.3d at 181; *Ischay*, 383 F. Supp. 2d at 1215; *Holst,* 637 F. Supp. at 147-48. As such, the ALJ erred by revisiting the settled issue of plaintiff's RFC and undertaking a new step five analysis pursuant to the new RFC, rather than adhering to the Court of Appeals' order, which had remanded the matter for the ALJ to resolve the job numbers discrepancy identified by plaintiff relative to the original step five determination. *See White*, 44 F.4th at 830, 837; AR 472, 488.

At the time the ALJ conducted proceedings in 2024, following remand from the district court pursuant to remand from the Court of Appeals, the issue of the plaintiff's RFC had been settled and, consequently, was law of the case not subject to reexamination during the remand proceedings.[8] *See Fallon*, 135 F.4th at 835-36; *Stacy*, 825 F.3d at 567. In plaintiff's initial

---

[8] The fact that the instant action proceeds under a different case number than plaintiff's original proceeding is irrelevant to this analysis. *See Fallon*, 135 F.4th at 835-36.

11

agency proceedings, the ALJ determined in 2018 that plaintiff had an RFC to perform sedentary work, excepting an ability to lift and carry 10 pounds frequently and 20 pounds occasionally, and was limited in the following ways: standing and/or walking were limited to two hours, cumulatively, during the workday; sitting was limited to six hour, cumulatively, during the workday; use of a cane was necessary for ambulation over 100 yards; limited to walking on even surfaces; limited to occasional climbing of ramps and stairs; cannot climb ropes, ladders, or scaffolds; limited to occasional balancing, stooping, kneeling, crouching, and crawling; no operation of foot controls with his left lower extremity; and he must be able to sit or stand, alternating every 30 minutes, without time off task.  AR 24.  When plaintiff sought review of the agency's denial of his claim of disability to the Appeals Council, he did not challenge this RFC determination, nor did defendant; rather, the only issue challenged by any party was plaintiff's claim that the ALJ had erred in step five by relying on inaccurate job availability data.  AR 299-03; *see* AR 1-17.  This remained true as plaintiff subsequently challenged the agency's denial in this court and in the Court of Appeals.  *See* Motion for Summary Judgment (ECF No. 11), *White v. Commissioner*, 2:19-cv-01498-AC, at 5-9; *White*, 44 F.4th at 833; AR 472, 477-79.  In its opinion, the Court of Appeals implicitly acknowledged this, treating as settled the question of plaintiff's RFC and confining its analysis solely to the question of the error in the step five analysis.  *See White*, 44 F.4th 828; AR 472-88.  In its holding reversing the district court, the sole basis for the Court of Appeals' reversal was the agency's error at step five, as the court held that the agency had erred in failing to resolve the discrepancy between the job numbers estimates provided by plaintiff to the Appeals Council and those to which the Vocational Expert had testified at the 2018 hearing.  *White*, 44 F.4th at 837; AR 487-88.

In remanding the matter, the Court of Appeals' mandate tracked its holding that the ALJ's step five analysis had been flawed.  It held and ordered:

> remand is appropriate to allow the ALJ to address the evidence and to resolve the inconsistency between the job-number estimates provided by White and by the VE.
>
> CONCLUSION
> The evidence White submitted to the Appeals Council created an inconsistency in the record that the agency had an obligation under *Buck* to address and resolve.

> We reverse the decision of the district court with directions that the case be remanded to the agency for further proceedings consistent with this opinion.

*White*, 44 F.4th at 837; AR 487-88.

Thus, the remand order from the Court of Appeals expressly stated that the case was being remanded to permit the ALJ to remedy the deficiencies in his decision by addressing the job-numbers discrepancy at step five that the Court of Appeals had identified. *See* AR 487-88. The remand order did not authorize the Appeals Council or the ALJ to revisit the previous step-four determination that of plaintiff's RFC, which had become law of the case. *See Fallon*, 135 F.4th at 835-36; *Stacy*, 825 F.3d at 567. There was nothing in the text of the Court of Appeals' order suggesting such, *see* AR 487-88, nor was it suggested by this court's subsequent order remanding the matter back to the agency, *see* AR 504, nor by the Appeals Council's order vacating the prior decision and remanding the case to an ALJ "for further proceedings consistent with the order of the court." *See* AR 514. There was, accordingly, no basis for the ALJ to deviate from the mandate of the Court of Appeals and review issues that had been previously settled in the step-four analysis, and the ALJ committed legal error in doing so. *See Sullivan,* 490 U.S. at 885-86; *see, e.g., Ischay*, 383 F. Supp. 2d at 1214-17; *Ruiz*, 24 F. Supp. 2d at 1050 n.7; *Holst,* 637 F.Supp. 145; *see also Almarez v. Astrue*, No. EDCV 09-00140-MAN, 2010 WL 3894646, at *3-6 (C.D. Cal. Sept. 30, 2010).

**B. Remand With Direction to Pay Benefits Is Appropriate**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan,* 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin,* 759 F.3d 995, 1020 (9th Cir. 2014); *see also Benecke v. Barnhart,* 379 F.3d 587, 595-96 (9th Cir. 2004) (holding remand for further proceedings is

13

1  appropriate where there are outstanding factual issues that must be resolved before a disability
2  determination can be made); *Harman v. Apfel,* 211 F.3d 1172, 1179-80 (9th Cir. 2000) (same).
3        Here, all relevant factors militate in favor of remand with directions to the agency to
4  award benefits to plaintiff. The Court of Appeals' mandate order had remanded the matter to the
5  agency "to address the evidence and to resolve the inconsistency between the job-number
6  estimates provided by White and by the VE," AR 488, namely, the plaintiff's evidence "using
7  SkillTRAN Job Browser Pro and the same DOT codes the VE had used—that there were 2,957
8  table worker, 0 assembler, and 1,333 film touch-up inspector jobs in the national economy" and
9  the VE's testimony "that there were 72,000, 65,000, and 32,000 jobs, respectively, in these same
10 occupations." AR 487-88. The evidence relevant to the resolution of this discrepancy was
11 developed on remand, such that no useful purpose would be served by remanding the matter
12 again. *See Garrison,* 759 F.3d at 1020. At the February 2024 hearing, the VE testified that,
13 under the same codes in SkillTRAN Job Browser Pro, *see* AR 84, 436-37, there were at that time
14 an estimated 1,225 table worker jobs, 20 assembler jobs, and 1,119 film touch-up inspector jobs
15 in the national economy. AR 437-38. Thus, the discrepancy between the original VE testimony
16 and plaintiff's contrary data was resolved by the Commissioner disavowing on remand the
17 original evidence and submitting, in its stead, estimates comparable to those submitted by
18 plaintiff.
19       On this evidence, step five can be resolved. *See Benecke,* 379 F.3d at 595-96. The job
20 numbers estimate evidence offered on remand establish that the Commissioner did not
21 demonstrate there were jobs extant "in significant numbers either in the region where [plaintiff]
22 lives or in several regions of the country," 42 U.S.C.A. § 423(d)(2)(A), that he could perform
23 given his RFC. On remand, the VE testified that there were a total of 2,364 jobs of table worker,
24 assembler, and film touch-up inspector in the national economy, *see* AR 437-38, which are those
25 jobs whose numbers are relevant to the issue set forth in the Court of Appeals' mandate order and
26 pursuant to the 2018 RFC determination, which is law of the case. This total number is so low as
27 to not be "significant" within the meaning of the regulations. *See Gutierrez v. Comm'r of Soc.*
28 *Sec.,* 740 F.3d 519, 529 (9th Cir. 2014) (holding 25,000 jobs in national economy was a

significant number, but that it was a "close call"); *Beltran v. Astrue*, 700 F.3d 386, 390 (9th Cir. 2012) (holding 1,680 nationwide jobs was not significant); *Allino v. Colvin*, 83 F. Supp. 3d 881, 888 (N.D. Cal. 2015) (3,200 jobs nationwide not significant); *see, e.g., Andrea L. v. Saul*, No. 2:18-CV-00253-MKD, 2020 WL 888520, at *7 (E.D. Wash. Feb. 24, 2020) (15,000 national jobs not significant); *Aguilar v. Colvin*, No. 5:15-CV-02081-GJS, 2016 WL 3660296, at *3 (C.D. Cal. July 8, 2016) (11,850 national jobs and 1,080 regional jobs significant; observing trend in the Central District of California to find job numbers over 10,000 nationally and 1,000 locally to be sufficient); *Lora M. v. Comm'r of Soc. Sec.*, No. 2:18-CV-00198-MKD, 2019 WL 2130303, at *4 (E.D. Wash. Apr. 5, 2019), *report and recommendation adopted sub nom. Lora A. M. v. Comm'r of Soc. Sec.*, No. 2:18-CV-00198-SMJ, 2019 WL 2127306 (E.D. Wash. May 15, 2019) (8,500 national jobs not significant); *Connolly v. Colvin*, No. 1:15-cv-718-BAM, 2016 WL 8730722, at *6 (E.D. Cal. Sept. 16, 2016) (19,000 national jobs and 1,900 regional jobs significant, relying on consideration of both figures; observing trend in Ninth Circuit courts to find job numbers over 10,000 nationally and 1,000 locally to be sufficient); *Selimovic v. Colvin*, No. CIV 13-1248-PHX-MHB, 2014 WL 4662251, at *10 (D. Ariz. Sept. 18, 2014) (13,110 national jobs not significant); *Baker v. Comm'r of Soc. Sec.*, No. 1:13-CV-01350-SAB, 2014 WL 3615497, at *8 (E.D. Cal. July 21, 2014) (14,500 national jobs not significant); *Valencia v. Astrue*, No. C 11-06223 LB, 2013 WL 1209353, at *18 (N.D. Cal. Mar. 25, 2013) (14,082 national jobs not significant); *cf. Lemauga v. Berryhill*, 686 F. App'x 420, 422 (9th Cir. 2017) (questioning sufficiency of 12,600 national jobs and 1,530 regional jobs); *Randazzo v. Berryhill*, 725 F. App'x 446, 448 (9th Cir. 2017) (questioning sufficiency of 10,000 national jobs and 550 regional jobs); *see generally* AR 486-87 (in remand order, Court of Appeals holding "[i]f the Appeals Council had credited White's estimates that there were only a total of 4,290 jobs (counting all three jobs) in the national economy that he could perform, there is a reasonable probability that the outcome of his proceeding may have been different," citing *Gutierrez*, 740 F.3d 519, and *Beltran*, 700 F.3d 386). Because the Commissioner failed to meet his burden to show that, given plaintiff's RFC, there is "work that exists in significant numbers in the national economy" that he may perform, *see Stout*, 454 F.3d at 1052, a finding of disability should be entered as a matter of law. *Ibid.*; *Benecke,* 379

F.3d at 595-96.

The remaining two prongs of the *Garrison* test are also satisfied, thereby justifying remand for award of benefits. The ALJ failed to provide legally sufficient reasons for finding that plaintiff was capable of performing work that exists in significant numbers in the national economy, thereby erroneously finding plaintiff not disabled as a result. *See* 42 U.S.C.A. § 423(d)(2)(A); *Stout*, 454 F.3d at 1052. If credited as true, the evidence establishes that plaintiff is disabled, because the VE testified that someone with plaintiff's limitations would be unable to find jobs in significant numbers that he could perform. Finally, there is no "serious doubt" based on "an evaluation of the record as a whole," *Garrison*, 759 F.3d at 1021, that plaintiff is, in fact, disabled, given the serious impairments to his mobility and daily functioning he suffers from his spinal injury. *See* AR 473-74, 522-23. Thus, the requirements of the *Garrison* test are met.

Finally, the "exceptional facts" of this case, *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990), weigh strongly in favor of remanding for immediate payment of benefits. *See Trevizo v. Berryhill*, 871 F.3d 664, 683 (9th Cir. 2017). Mr. White is now 53 years old and began seeking disability benefits over nine years ago, with his claimed disability having begun over fifteen years ago. AR 96, 207. He has diligently litigated his initial denial of disability payments for the past seven years, including pressing his claims of error through the Appeals Council and this court before finally succeeding in the Court of Appeals; even after that, he has diligently pursued relief from errors that occurred after remand. These efforts serve a public benefit, as the law may only develop and be clarified when litigants undertake the difficulties of seeking review in the courts, but that benefit has come at a hardship to Mr. White—a burden compounded as it must be by the physical pain that accompanies his daily life. In light of this history, "further delays at this point would be unduly burdensome" to Mr. White, confirming the propriety of the immediate award of benefits. *See Terry*, 903 F.2d at 1280 (ordering payment of benefits where the claimant was 64 years old and had applied for benefits three years earlier, despite the record lacking evidence about a job for which the claimant was purportedly qualified); *see also Trevizo*, 871 F.3d at 683 (ordering award of benefits where claimant was 65 years old, had sought benefits six years prior, and her claimed disability began nine years prior); *Smolen*, 80 F.3d at 1292 (remanding for

determination of benefits where the claimant had "already waited over seven years for her disability determination"). In light of the entirety of the record, remand for entry of an award of disability benefits to Mr. White is the proper remedy.

### IV. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Defendant's Motion to Remand (ECF No. 14) is DENIED.

(2) Plaintiff's Motion for Summary Judgment (ECF No. 12) is GRANTED.

(3) The decision of the Secretary is REVERSED and REMANDED with directions to pay benefits to plaintiff Tyrone L. White.

(4) The Clerk is directed to close the case.

Dated: August 12, 2025

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE